

KSH/JDK



FILED IN OPEN COURT

JUN 27 2024

CHRISTOPHER L. EKMAN, CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | *  CRIM. NO. 24-113-CG |
| | *  USAO NO. 24R00276 |
| v. | *  OCDETF NO. SE-ALS-0124 |
| | * |
| ECHANDZA DIANCA MAXIE (MCGEE) | *  VIOLATIONS: 18 USC § 1349 |
| a/k/a "Chan," | *         18 USC § 1343 |
| GLENNIE ANTONIO MCGEE | *         18 USC § 1956(h) |
| a/k/a "Litle G" a/k/a/ "Little Man," | *         18 USC § 1028A(a)(1) |
| EDESZANN DAILENE MAXIE | *         18 USC § 2 |
| a/k/a "Zann" a/k/a "Deszann," | * |
| TIVERIA SHANTELL POPULUS and | *  **FILED UNDER SEAL** |
| JOHN DAVID CLARKE | * |
| a/k/a "Bobe" a/k/a "Club" a/k/a | * |
| "Stackhouse" a/k/a "Stack" | * |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### Introduction

At times material to this Indictment:

1.    **ECHANDZA DIANCA MAXIE a/k/a "Chan"** resided in Mobile County, Alabama, within Southern District of Alabama.

2.    **GLENNIE ANTONIO MCGEE a/k/a "Litle G" a/k/a/ "Little Man"** resided in Mobile County, Alabama, within the Southern District of Alabama.

3.    **EDESZANN DAILENE MAXIE a/k/a "Zann" a/k/a "Deszann"** resided in Mobile County, Alabama within the Southern District of Alabama and Atlanta, Georgia within the Northern District of Georgia.

4.    **TIVERIA SHANTELL POPULUS** resided in Mobile County, Alabama, within the Southern District of Alabama.

SEALED

5.      **JOHN DAVID CLARKE a/k/a "Bobe" a/k/a "Club" a/k/a "Stackhouse" a/k/a "Stack"** resided in Mobile County, Alabama, within the Southern District of Alabama.

## The COVID-19 Sick Leave and Family Leave Tax Credit

6.      In response to the COVID-19 pandemic, Congress passed The Families First Coronavirus Response Act (FFRCA), which was enacted in or about March 2020.  The FFRCA entitled eligible employers to receive tax credits for wages paid for certain leave, whether from qualified sick leave or qualified family leave, taken by employees due to the Coronavirus (COVID-19) pandemic.  The FFCRA contained a provision for eligible self-employed individuals to figure refundable qualified sick and family leave "equivalent" credits if they were unable to perform services as a self-employed individual due to certain COVID-19 related circumstances occurring between January 1, 2021, and September 30, 2021.

7.      The tax credit was available to self-employed individuals who missed work because he or she had to quarantine, care for a family member with COVID-19, care for a child during COVID-related school closures or experienced COVID-19 symptoms.  Eligible self-employed individuals were required to file Internal Revenue Service (IRS) Form 7202, Credit for Family Leave for Certain Self-Employed Individuals, with their personal Federal Tax returns to claim these credits.

8.      The IRS is an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States, and collecting taxes owed to the United States.

9.      An IRS Form 1040, U.S. Individual Income Tax Return, is a form used by taxpayers to file an annual income tax return.

SEALED

10.     An IRS Form 8888, Allocation of Refund ("split refund form"), was a form that taxpayers could attach to their income tax return to split their claimed tax refund between up to three direct deposit accounts, including bank accounts and prepaid debit cards.

11.     A 5071C letter ("identity verification letter") was a form letter that the IRS sent to taxpayers informing the taxpayer that they must verify their identity before the IRS could process their income tax return or issue their tax refund.  To verify their identity over the phone, taxpayers needed to have the received identity verification letter, as well as their tax return and supporting documentation.

12.     A "means of identification" was any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including a name, Social Security number, driver's license number, date of birth, or an access device.

**COUNT ONE**
**Conspiracy to Commit Fraud**
**Title 18, United States Code, Section 1349**

13.     The factual allegations of paragraphs 1 through 12 of this Indictment are re-alleged as though fully set forth herein.

14.     Beginning on or about January 2022, and continuing to through the date of this indictment, the exact dates being unknown, within the Southern District of Alabama, and elsewhere, the defendants,

**ECHANDZA DIANCA MAXIE**
**a/k/a "Chan,"**
**GLENNIE ANTONIO MCGEE**
**a/k/a "Litle G" a/k/a/ "Little Man,"**
**EDESZANN DAILENE MAXIE**
**a/k/a "Zann" a/k/a "Deszann,"**
**TIVERIA SHANTELL POPULUS, and**
**JOHN DAVID CLARKE**
**a/k/a "Bobe" a/k/a "Club" a/k/a "Stackhouse" a/k/a "Stack,"**

SEALED

willfully, knowingly, and unlawfully combined, conspired, confederated, and agreed together and with other persons, both known and unknown to the Grand Jury, to commit mail fraud in violation of Title 18, United States Code, Section 1341 and wire fraud in violation of Title 18, United States Code, Section 1343.

### Objective of the Conspiracy

15.     The purpose and objective of the conspiracy was to fraudulently obtain money and property belonging to the United States and others by using the means of identification of others unlawfully.

### Manner and Means of the Conspiracy

16.     To achieve the objective of this conspiracy, among other things, the conspirators would and did the following:

a.  agreed to file and caused to be filed false federal income tax returns in the names of third parties without their consent or knowledge;

b.  obtained, possessed, and used the means identification of individuals, including their names, dates of birth, social security numbers, and driver's license numbers, for unlawful purposes;

c.  used recruiters and "finders" to collect means of identification belonging to individuals;

d.  obtained means of identification of individuals who were unfamiliar with the tax filing process;

e.  obtained means of identification of individuals without potential liabilities, such as child support that would offset the amount of a potential tax refund;

4

SEALED

f.   obtained means of identification of individuals through false and fraudulent pretenses, representations, and promises of how their means of identification would be used;

g.   created and used and caused to be created and used false and fraudulent IRS forms and documents;

h.   prepared and electronically filed and caused to be prepared and electronically filed fraudulent tax returns using the personal identifying information (PII) of individuals without their consent or knowledge;

i.   prepared and electronically filed and caused to be prepared and electronically filed fraudulent tax returns in the names of other individuals that contained contact information, such as a phone number or email address, belonging to or controlled by the conspirators;

j.   directed fraudulently claimed tax refunds from the IRS to be deposited into bank accounts in the names of conspirators and banking accounts associated with unrelated businesses controlled by the conspirators;

k.   created and caused others to create online financial services accounts, such as Chime accounts, for the purpose of receiving fraudulent tax refunds;

l.   attached and caused to be attached split refund forms to fraudulent tax returns, directing the IRS to split anticipated tax refunds between two or three financial accounts, including online financial accounts designated or controlled by the conspirators;

m.   took steps to conceal the fraudulent conduct by, among other means, creating joint accounts with third parties to retrieve fraudulent tax refunds;

5

SEALED

n.   received fraudulently claimed tax refunds from the IRS and shared the proceeds
of the scheme amongst co-conspirators;

o.   made and caused to be made unlawful in-person withdrawals from bank
accounts belonging to third parties;

p.   monitored and received fraudulently obtained treasury checks payable to third
party taxpayers;

q.   monitored, intercepted, and possessed correspondence from the IRS, including
identity verification letters; and

r.   directed and caused individuals to execute checks drawn on accounts where
fraudulent tax refund proceeds were deposited.

17.    During the course, and in furtherance of the conspiracy set out in Count One, the
**DEFENDANTS** transmitted and caused to be transmitted wire communications in interstate
commerce, which either terminated or originated in the Southern District of Alabama, and did
cause the IRS to deposit matters and things sent or delivered by United States Mail to locations in
the Southern District of Alabama.

In violation of Title 18, United States Code, Section 1349.

**COUNTS TWO THROUGH TEN**
**Wire Fraud**
**Title 18, United States Code, Section 1343**

18.    The factual allegations of paragraphs 1 through 12 and 14 through 17 of this
Indictment are re-alleged as though fully set forth herein.

19.    From in or about January 2022 and continuing through the date of this indictment,
within the Southern District of Alabama, and elsewhere, the defendants,

**ECHANDZA DIANCA MAXIE**
**a/k/a "Chan,"**

SEALED

**GLENNIE ANTONIO MCGEE**
a/k/a "Litle G" a/k/a/ "Little Man,"
**EDESZANN DAILENE MAXIE**
a/k/a "Zann" a/k/a "Deszann,"
**TIVERIA SHANTELL POPULUS, and**
**JOHN DAVID CLARKE**
a/k/a "Bobe" a/k/a "Club" a/k/a "Stackhouse" a/k/a "Stack,"

devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, caused to be transmitted by means of wire communication in interstate and foreign commerce, communications, signals, and writings, to wit: electronically filed tax returns.

### Purpose of the Scheme and Artifice

20.     The purpose and objective of the scheme was to fraudulently obtain money and property belonging to the United States and others using the means of identification of others unlawfully.

### Manner and Means of the Scheme and Artifice

21.     It was part of the scheme and artifice that the defendants identified below, and others known and unknown to the Grand Jury, would and did obtain the means of identification of individuals, including their names, dates of birth, and Social Security numbers.

22.     It was further part of the scheme and artifice that the defendants identified below in each count would and did use these means of identification of other individuals to prepare and electronically file and cause to be filed false and fraudulent tax returns in other individuals' names to obtain fraudulent tax refunds.

### Wire Communications

23.     On or about the dates listed below, in the Southern District of Alabama, and elsewhere, the defendants identified below, for the purpose of executing the scheme and artifice,

7

SEALED

and to aid and abet the same, and attempting to do so, did cause to be transmitted in interstate commerce, by means of a wire communication in interstate and foreign commerce, certain signs and signals as described for each court below:

| Count | Defendant(s) | Date (on or about) | Wire Communication |
|---|---|---|---|
| 2 | ECHANDZA DIANCA MAXIE and GLENNIE ANTONIO MCGEE | May 11, 2022 | Electronically Filed Form 1040 in the name of "A.J.", whose identity is known to the Grand Jury, claiming a tax refund of $25,836. |
| 3 | ECHANDZA DIANCA MAXIE and EDESZANN DAILENE MAXIE | July 3, 2022 | Electronically Filed Form 1040 in the name of "J.M.", whose identity is known to the Grand Jury, claiming a tax refund of $30,226. |
| 4 | ECHANDZA DIANCA MAXIE, and GLENNIE ANTONIO MCGEE | July 15, 2022 | Electronically Filed Form 1040 in the name of "C.Wo.", whose identity is known to the Grand Jury, claiming a tax refund of $30,152. |
| 5 | ECHANDZA DIANCA MAXIE and GLENNIE ANTONIO MCGEE | July 27, 2022 | Electronically Filed Form 1040 in the name of "V.W.", whose identity is known to the Grand Jury, claiming a tax refund of $27,669. |

SEALED

| Count | Defendant(s) | Date (on or about) | Wire Communication |
|-------|--------------|--------------------|--------------------|
| 6 | ECHANDZA DIANCA MAXIE, GLENNIE ANTONIO MCGEE, TIVERIA SHANTELL POPULUS, and JOHN DAVID CLARKE | July 28, 2022 | Electronically Filed Form 1040 in the name of "T.W.", whose identity is known to the Grand Jury, claiming a tax refund of $30,055. |
| 7 | ECHANDZA DIANCA MAXIE, and GLENNIE ANTONIO MCGEE | August 2, 2022 | Electronically Filed Form 1040 in the name of "Q.R.", whose identity is known to the Grand Jury, claiming a tax refund of $29,914. |
| 8 | ECHANDZA DIANCA MAXIE, GLENNIE ANTONIO MCGEE, and EDESZANN DAILENE MAXIE | August 4, 2022 | Electronically Filed Form 1040 in the name of "J.S.", whose identity is known to the Grand Jury, claiming a tax refund of $28,369. |
| 9 | ECHANDZA DIANCA MAXIE, GLENNIE ANTONIO MCGEE, TIVERIA SHANTELL POPULUS, and JOHN DAVID CLARKE | August 16, 2022 | Electronically Filed Form 1040 in the name of "C.Wh.", whose identity is known to the Grand Jury, claiming a tax refund of $30,449. |

9

SEALED

| Count | Defendant(s) | Date (on or about) | Wire Communication |
|-------|-------------|---------------------|---------------------|
| 10 | ECHANDZA DIANCA MAXIE, GLENNIE ANTONIO MCGEE, TIVERIA SHANTELL POPULUS, and JOHN DAVID CLARKE | September 14, 2022 | Electronically Filed Form 1040 in the name of "J.B.", whose identity is known to the Grand Jury, claiming a tax refund of $29,543. |

In violation of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 2.

### COUNT ELEVEN
### Money Laundering Conspiracy
### Title 18, United States Code, Section 1956(h)

24.     The factual allegations of paragraphs 1 through 12 and 14 through 17 of this Indictment are re-alleged as though fully set forth herein.

### The Conspiracy

25.     From in or about January 2021, and continuing through the date of this indictment, without the Southern District of Alabama, and elsewhere, the defendants,

**ECHANDZA DIANCA MAXIE**
**a/k/a "Chan,"**
**GLENNIE ANTONIO MCGEE**
**a/k/a "Litle G" a/k/a/ "Little Man,"**
**TIVERIA SHANTELL POPULUS, and**
**JOHN DAVID CLARKE**
**a/k/a "Bobe" a/k/a "Club" a/k/a "Stackhouse" a/k/a "Stack,"**

did knowingly combine, conspire, and agree with each other, and with others both known and unknown to the Grand Jury, to knowingly engage and attempt to engage in monetary transactions

SEALED

by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, such property having been derived from a specified unlawful activity, that is, conspiracy to commit fraud and wire fraud, as charged in Counts One through Ten, of this Indictment, in violation of Title 18, United States Code, Section 1957(h).

### Manner and Means of the Conspiracy

26.     The allegations set out in paragraphs 1 through 12 and 14 through 17 of this Indictment are re-alleged as though fully set forth herein.

27.     The manner and means of the conspiracy, included but is not limited to the following:

a.  On or about August 12, 2022, **TIVERIA SHANTELL POPULUS** opened a personal checking account at Woodforest Bank ending in #0586 solely in her name.

b.  On or about September 14, 2022, **ECHANDZA DIANCA MAXIE** electronically filed a fraudulent 1040 form in the name of J.B. and charged a document prep fee and tax preparation fee for the return.

c.  On or about October 4, 2022, **TIVERIA SHANTELL POPULUS** received a fraudulent tax refund in the amount of $28,764.10 in the name of J.B. directly deposited into her personal Woodforest Bank account ending in #0586.

d.  On or about October 4, 2022, **JOHN DAVID CLARKE** and **GLENNIE ANTONIO MCGEE** discuss how they might be able to retrieve the tax refund from **TIVERIA SHANTELL POPULUS's** account without drawing a "red flag."

11

SEALED

e. On or about October 6, 2022, **JOHN DAVID CLARKE**, **GLENNIE MGEEE**, and **ECHANDZA DIANCA MAXIE** discuss plans of how **TIVERIA SHANTELL POPULUS** should retrieve the tax refund in J.B.'s name.

f. On or about October 7, 2022, **TIVERIA SHANTELL POPULUS** opens a joint Woodforest Bank checking account with J.B., account ending in #2376.

28.  The manner and means of the money laundering conspiracy further included, among others, the following monetary transactions within the United States:

| Date (on or about) | Monetary Transactions (Approximate Amounts) |
|---|---|
| October 7, 2022 | **TIVERIA SHANTELL POPULUS** transferred $24,427.56 from her Woodforest Bank account held solely in her name, ending in #0586, to a joint checking account she held at Woodforest Bank with J.B., account ending in #2376. |
| October 12, 2022 | **TIVERIA SHANTELL POPULUS** transfers $15,000.00 from the joint checking account she held at Woodforest Bank with J.B., account ending in #2376, to her Woodforest Bank account held solely in her name, ending in #0586. |
| October 13, 2022 | **TIVERIA SHANTELL POPULUS** withdrew $15,000 from her Woodforest Checking account held solely in her name, ending in #0586, to fund a cashier's check in the amount of $15,000 payable to **GLENNIE ANTONIO MCGEE**. |

SEALED

| Date<br>(on or about) | Monetary Transactions (Approximate Amounts) |
|---|---|
| October 13, 2022 | **GLENNIE ANTONIO MCGEE** deposited the cashier's check executed by **TIVERIA SHANTELL POPULUS** in the amount of $15,000.00 into his Wells Fargo account ending in #2967 associated with "Belle & Beau Properties." |

In violation of Title 18, United States Code, Section 1956(h).

### COUNTS TWELVE THROUGH SIXTEEN
### Aggravated Identity Theft
### Title 18, United States Code, Section 1028A(a)(1)

29.    The factual allegations of paragraphs 1 through 12 and 14 through 17 of this Indictment are re-alleged as though fully set forth herein.

30.    On or about the dates set forth below, the defendants did knowingly use, without lawful authority, the means of identification of another person, *i.e.*, a name and social security number, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, conspiracy to commit wire fraud and wire fraud charged in this Indictment, knowing that the means of identification belonged to another person whose true name is known to the Grand Jury, as follows:

| Count | Defendant(s) | Date<br>(on or about) | Predicate<br>Offense(s) | Individual |
|---|---|---|---|---|
| 12 | **ECHANDZA DIANCA MAXIE and GLENNIE ANTONIO MCGEE** | May 11, 2022 | Counts 1 and 2 | A.J. |

13

SEALED

| Count | Defendant(s) | Date (on or about) | Predicate Offense(s) | Individual |
|-------|--------------|--------------------|----------------------|------------|
| 13 | ECHANDZA DIANCA MAXIE, GLENNIE ANTONIO MCGEE, AND EDESZANN DAILENE MAXIE | June 13, 2022 | Count 1 | A.S. |
| 14 | ECHANDZA DIANCA MAXIE and GLENNIE ANTONIO MCGEE | July 15, 2022 | Counts 1 and 4 | C.Wo. |
| 15 | ECHANDZA DIANCA MAXIE and GLENNIE ANTONIO MCGEE | July 27, 2022 | Counts 1 and 5 | V.W. |
| 16 | ECHANDZA DIANCA MAXIE, and GLENNIE ANTONIO MCGEE | August 2, 2022 | Counts 1 and 7 | Q.R. |

In violation of Title 18, United States Code, Sections 1028A(a)(1).

## COUNTS SEVENTEEN THROUGH THIRTY-FOUR

### Introduction

31.     On March 13, 2020, the President of the United States declared a national emergency concerning the COVID-19 pandemic (Proclamation 9994), and the declaration was further extended on February 18, 2022.  On March 27, 2020, the Coronavirus Aid, Relief, and

SEALED

Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic consequences caused by the COVID-19 pandemic.

32.     The CARES Act established several new temporary programs and provided for expansion of others, including programs created and administered by the SBA. The Small Business Administration ("SBA") was created in 1953 as an independent agency of the executive branch of the federal government to aid, counsel, assist, and protect the interests of small business and to maintain and strengthen the overall economy of the United States. The SBA maintained and strengthened the nation's economy by, among other activities, enabling the establishment and viability of small business and by assisting in the economic recovery of communities after disasters. In executing its mission, the SBA provides direct loans to small businesses and those affected by disasters.

33.     The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest loans to small businesses in regions affected by declared disasters, such as the COVID-19 pandemic.

34.     The CARES Act authorized the SBA to provide EIDL loans to eligible small businesses, private non-profits, agricultural businesses, and religious institutions experiencing substantial financial disruptions due to the COVID-19 pandemic. The CARES Act also authorized the SBA to issue emergency advances of up to $10,000.00 depending on the number of employees a small business employed. These funds could only be used to pay legitimate business expenses, such as wages, operating costs, rent or mortgage payments, and other business debts.

35.     An EIDL applicant seeking relief due to the COVID-19 pandemic was required to submit an online application to the SBA and provide information about the business, such as the

SEALED

number of employees, gross revenue for the 12-month period preceding January 31, 2020, and operating costs or cost of goods sold during the same period. The information provided by the applicant was used by the SBA to determine the amount of the EIDL principal and emergency advance. Although supporting documentation was not required unless requested by SBA personnel during the EIDL evaluation process, the applicant had to certify under penalty of perjury that all information in the application was true and correct. Applicants were warned that providing false statements to the SBA may result in criminal sanctions.

36.     The CARES Act also authorized the SBA to provide loans through banks, credit unions, and other lenders. These loans had government-backed guarantees. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP"). Congress has since increased the authorization amount for PPP loans to more than $813 billion. The PPP required that small businesses must have been in operation on or before February 15, 2020, maintained employees, and realized monthly payroll costs.

37.     To obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires that the business (through its authorized representative) acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses, and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In

SEALED

addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

38.     A PPP loan application must be processed by an SBA-authorized participating lender.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA while processing the loan.

39.     EIDL and PPP loan proceeds must be used by the business on certain permissible expenses such as payroll costs, mortgage interest, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

40.     The EIDL/PPP loan applications identified below were submitted to the SBA's servers located in Sterling, Virginia where, upon receipt and processing, the SBA created a loan number which was, in turn, transmitted from SBA servers in Sterling, Virginia.

41.     Celtic Bank, Harvest Small Business Finance, LLC, Lendistry, Radius Bank, and Fountainhead SBF, LLC, are approved PPP lenders headquartered outside of the Southern District of Alabama (the "Lenders").  These lenders are financial institutions as defined by 18 U.S.C. § 20.

42.     In conjunction with the SBA, the Lenders work jointly with technology partners whose websites and internal PPP/EIDL platforms are hosted by Amazon Web Services, which furnishes information technology infrastructure and computer servers located outside of the State of Alabama which were used to ingest the Defendants' PPP/EIDL applications.  The Small Business Administration's servers are located in Sterling, Virginia where, upon receipt and

17

SEALED

processing, the SBA created a loan number which was, in turn, transmitted from SBA servers in Sterling, Virginia.

## COUNT SEVENTEEN
### Conspiracy to Commit Wire Fraud
### Title 18, United States Code, Section 1349

43.     The factual allegations of paragraphs 31 through 42 of this Indictment are re-alleged as though fully set forth herein.

44.     From in or about March 2020, and continuing to in or about August 2021, the exact dates being unknown, within the Southern District of Alabama, and elsewhere, the defendants,

**ECHANDZA DIANCA MAXIE**
**a/k/a "Chan,"**
**GLENNIE ANTONIO MCGEE**
**a/k/a "Litle G" a/k/a/ "Little Man,"**
**EDESZANN DAILENE MAXIE**
**a/k/a "Zann" a/k/a "Deszann,"**
**TIVERIA SHANTELL POPULUS, and**
**JOHN DAVID CLARKE**
**a/k/a "Bobe" a/k/a "Club" a/k/a "Stackhouse" a/k/a "Stack,"**

willfully, knowingly, and unlawfully combined, conspired, confederated, and agreed together and with other persons, both known and unknown to the Grand Jury, to commit an offense against the United States, namely, wire fraud in violation of Title 18, United States Code, Section 1343.

### Objective of the Conspiracy

45.     The purpose and objective of the conspiracy was for the defendants to execute a scheme and artifice to defraud the United States, the SBA, and others, and to obtain money and property belonging to the United States, the SBA, and others, by means of materially false and fraudulent pretenses, representations, and promises for their own unjust enrichment.

### Manner and Means of the Conspiracy

SEALED

46.     To achieve the conspiracy's objective, the conspirators sought to accomplish the conspiracy by, among other things, the following acts:

   a.      submitting false EIDL applications to the SBA;

   b.      submitting false PPP applications to the SBA;

   c.      making electronic transfers between bank accounts;

   d.      issuing and depositing unlawful checks and unlawfully altering checks for deposit;

   e.      creating and using false or forged employee records, including payroll and W-2 records; and

   f.      creating and using false or forged Internal Revenue Service documents and forms.

In violation of Title 18, United States Code, Section 1349.

### COUNTS EIGHTEEN THROUGH THIRTY-FOUR
### Wire Fraud
### Title 18, United States Code, Section 1343

47.     The factual allegations of paragraphs 31 through 42 of this Indictment are re-alleged as though fully set forth herein.

48.     From in or about March 2020, and continuing to in or about August 2021, the exact dates being unknown, within the Southern District of Alabama, and elsewhere, the defendants,

**ECHANDZA DIANCA MAXIE**
**a/k/a "Chan,"**
**GLENNIE ANTONIO MCGEE**
**a/k/a "Litle G" a/k/a/ "Little Man,"**
**EDESZANN DAILENE MAXIE**
**a/k/a "Zann" a/k/a "Deszann,"**
**TIVERIA SHANTELL POPULUS, and**
**JOHN DAVID CLARKE**
**a/k/a "Bobe" and a/k/a "Club" a/k/a "Stackhouse" a/k/a "Stack,"**

**SEALED**

devised and intended to devise a scheme and artifice to defraud the United States, the SBA, and others, and to obtain money and property belonging to the United States, the SBA, and others, by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme and Artifice

49.     The purpose of the scheme and artifice was to defraud the United States, the SBA, and others of money and property.

### Manner and Means of the Scheme and Artifice

50.     As a part of the manner and means of their scheme and artifice, on the dates set forth below, in the Southern District of Alabama, and elsewhere, the defendants identified below, for the purpose of executing the above-described scheme and artifice, and to aid and abet the same, and attempting to do so, did cause to be transmitted in interstate commerce, by means of a wire communication, certain signs and signals, that is, the defendants caused interstate wire communication when false and fraudulent PPP and EIDL loan applications were submitted to the SBA.

### Executions of the Scheme and Artifice

51.     The defendants executed their scheme and artifice as provided below:

| Count | Defendant(s) | Date (on or about) | Execution of Scheme and Artifice |
|---|---|---|---|
| 18 | **ECHANZDA DIANCA MAXIE** | May 1, 2020 | The defendant caused an interstate wire communication when a false and fraudulent PPP loan application was submitted to the SBA (loan number ending in x7301). |

20

SEALED

| Count | Defendant(s) | Date<br>(on or about) | Execution of Scheme and Artifice |
|---|---|---|---|
| 19 | **ECHANZDA DIANCA MAXIE** | May 6, 2020 | The defendant caused an interstate wire communication when a false and fraudulent PPP loan application was submitted to the SBA (loan number ending in x7404). |
| 20 | **ECHANZDA DIANCA MAXIE** | May 29, 2020 | The defendant caused an interstate wire communication when a false and fraudulent EIDL loan application was submitted to the SBA (loan number ending in x7810). |
| 21 | **ECHANZDA DIANCA MAXIE** | June 20, 2020 | The defendant caused an interstate wire communication when a false and fraudulent EIDL loan application was submitted to the SBA (loan number ending in x7900). |
| 22 | **GLENNIE ANTONIO MCGEE and EDESZANN DAILENE MAXIE** | June 11, 2020 | The defendants caused an interstate wire communication when a false and fraudulent EIDL loan application was submitted to the SBA (loan number ending in x7904). |

SEALED

| Count | Defendant(s) | Date (on or about) | Execution of Scheme and Artifice |
|-------|-------------|---------------------|----------------------------------|
| 23 | GLENNIE ANTONIO MCGEE and EDESZANN DAILENE MAXIE | June 20, 2020 | The defendants caused an interstate wire communication when a false and fraudulent EIDL loan application was submitted to the SBA (loan number ending in ending in x7907). |
| 24 | GLENNIE ANTONIO MCGEE | June 26, 2020 | The defendant caused an interstate wire communication when a false and fraudulent EIDL loan application was submitted to the SBA (loan number ending in x8001). |
| 25 | GLENNIE ANTONIO MCGEE | July 16, 2020 | The defendant caused an interstate wire communication when a false and fraudulent EIDL loan application was submitted to the SBA (loan number ending in x8100). |
| 26 | EDESZANN DAILENE MAXIE | Feb. 24, 2021 | The defendant caused an interstate wire communication when a false and fraudulent EIDL loan application ending in x1409 was submitted to the SBA. |

SEALED

| Count | Defendant(s) | Date (on or about) | Execution of Scheme and Artifice |
|---|---|---|---|
| 27 | JOHN DAVID CLARKE | April 19, 2021 | The defendant caused an interstate wire communication when a false and fraudulent PPP loan application was submitted to the SBA (loan number ending in x8807). |
| 28 | JOHN DAVID CLARKE | May 31, 2021 | The defendant caused an interstate wire communication when a false and fraudulent PPP loan application was submitted to the SBA (loan number ending in x9009). |
| 29 | JOHN DAVID CLARKE | June 23, 2020 | The defendant caused an interstate wire communication when a false and fraudulent EIDL loan application ending in x4994 was submitted to the SBA. |
| 30 | JOHN DAVID CLARKE | July 9, 2020 | The defendant caused an interstate wire communication when a false and fraudulent EIDL loan application ending in x2394 was submitted to the SBA. |
| 31 | JOHN DAVID CLARKE | July 7, 2021 | The defendant caused an interstate wire communication when a false and fraudulent EIDL loan application ending in x8340 was submitted to the SBA. |

SEALED

| Count | Defendant(s) | Date (on or about) | Execution of Scheme and Artifice |
|-------|--------------|--------------------|----------------------------------|
| 32 | TIVERIA SHANTELL POPULUS | April 11, 2021 | The defendant caused an interstate wire communication when a false and fraudulent PPP loan application was submitted to the SBA (loan number ending in x8801). |
| 33 | TIVERIA SHANTELL POPULUS | July 22, 2020 | The defendant caused an interstate wire communication when a false and fraudulent PPP loan application was submitted to the SBA (loan number ending in x7381). |
| 34 | TIVERIA SHANTELL POPULUS | January 26, 2021 | The defendant caused an interstate wire communication when a false and fraudulent EIDL loan application ending in x0802 was submitted to the SBA. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE NOTICE

52.     The allegations contained in Counts One through Thirty-Four of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18 United States Code, Section 982(a)(2)(A), and Title 28, United States Code, Section, 2461(c).

53.     Upon conviction of the offenses in violation of Title 18, United States Code, Section 1349 set forth in Counts One and Seventeen; Title 18, United States Code, Section 1343 set forth

SEALED

in Counts Two through Thirteen and Eighteen through Thirty-Four; Title 18, and United States

Code, Section 1956(h) set forth in Count Eleven, the defendants,

**ECHANDZA DIANCA MAXIE**
**a/k/a "Chan,"**
**GLENNIE ANTONIO MCGEE**
**a/k/a "Litle G" a/k/a/ "Little Man,"**
**EDESZANN DAILENE MAXIE**
**a/k/a "Zann" a/k/a "Deszann,"**
**TIVERIA SHANTELL POPULUS, and**
**JOHN DAVID CLARKE**
**a/k/a "Bobe" a/k/a "Club" a/k/a "Stackhouse" a/k/a "Stack,"**

shall forfeit to the United States any property constituting or derived from any proceeds obtained

directly or indirectly as the result of such offense and any property used or intended to be used in

any manner or part to commit or to facilitate the commission of the offenses charged in Counts

One through Eleven and Seventeen through Thirty-Four.  Additionally, the defendants shall

forfeit any property, real or personal, involved in the offenses charged in Counts One through

Eleven and Seventeen through Thirty-Four and any property traceable to such property.  The

property to be forfeited includes, but is not limited to the following:

a.  U.S. Currency in an amount up to $177.07 seized from Regions Bank account ending in x5449;

b.  U.S. Currency in an amount up to $15,815.91 seized from Regions Bank account ending in x9194;

c.  U.S. Currency in an amount up to $11,753.10 seized from Regions Bank account ending in x9186;

d.  U.S. Currency in an amount up to $4,071.85 seized from Regions Bank account ending in x4561;

SEALED

e. U.S. Currency in an amount up to $4,071.85 seized from Regions Bank account ending in x4561;

f. U.S. Currency in an amount up to $54,026.05 seized from Regions Bank account ending in x2608;

g. The real property located at 1766 Le Grande Drive, Mobile, Alabama 36618;

h. The real property located at 1167 Terrel Road, Mobile, Alabama 36605;

i. A MONEY JUDGMENT: A sum of money in United States Currency of at least $40,994.38 that the defendant, **ECHANDZA DIANCA MAXIE,** obtained as a result of the offenses charged in Count Seventeen through Twenty-One; and

j. A MONEY JUDGMENT: A sum of money in United States Currency of at least $168,100 that the defendant, **GLENNIE ANTONIO MCGEE,** obtained as a result of the offenses charged in Counts Seventeen and Twenty-Two through Twenty-Five.

k. A MONEY JUDGMENT: A sum of money in United States Currency of at least $129,600 that the defendant, **EDESZANN DAILENE MAXIE,** obtained as a result of the offenses charged in Counts Seventeen, Twenty-Two through Twenty-Three, and Twenty-Six.

l. A MONEY JUDGMENT: A sum of money in United States Currency of at least $49,999 that the defendant, **JOHN DAVID CLARKE**, obtained as a result of the offenses charged in Counts Seventeen and Twenty-Seven through Thirty-One.

m. A MONEY JUDGMENT: A sum of money in United States Currency of at least $41,665 that the defendant, **TIVERIA SHANTELL POPULUS**, obtained as a result of the offenses charged in Counts Seventeen and Thirty-Two through Thirty-Four.

If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

SEALED

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been comingled with other property which cannot be subdivided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), Title 18 United States Code, Section 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON, UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By:

_____
KASEE S. HEISTERHAGEN
Assistant United States Attorney

_____
JUSTIN KOPF
Assistant United States Attorney

_____
SEAN P. COSTELLO
United States Attorney                    JUNE 2024

27

**SEALED**